**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas Mark PRITCHETT, Phillip Doyle Boothe, David E. Pritchett, Joseph C. Pritchett, Rhonda Pritchett (Reinstated), Defendants–Appellants.**

No. 89–7068.

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1990.

M.A. Marsal, Mobile, Ala., for Douglas M. Pritchett.

Arthur J. Madden, III, Madden & Soto, Mobile, Ala., for Boothe.

J. Stephen Salter, Birmingham, Ala., for David E. Pritchett.

Thomas J. Spina, Hartman, Fawal & Spina, Birmingham, Ala., for Rhonda Pritchett.

Joseph M. Powers, Mobile, Ala., for Joseph C. Pritchett.

Gloria Bedwell, Asst. U.S. Atty., Mobile, Ala., for U.S.

Before CLARK and EDMONDSON, Circuit Judges, and RUBIN[*], Senior Circuit Judge.

CLARK, Circuit Judge:

This case involves appeals by five co-defendants who were convicted of conspiring to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a), 846, and conspiring to evade federal income taxes, in violation of 26 U.S.C. § 7201. We affirm the convictions of the four co-defendants convicted of conspiracy to distribute cocaine, but reverse the conviction of the two co-defendants charged with conspiring to evade federal income taxes.

## BACKGROUND

The evidence presented at trial indicates that defendant Joe Pritchett and his brother, defendant David Pritchett, were involved in distributing significant amounts of cocaine between 1980 and 1987. David's wife, defendant Rhonda Pritchett, and David's and Joe's nephew, defendant Phillip Boothe, also participated in the cocaine distribution, but Joe was clearly the driving force behind the operation. He decided when and how much cocaine would be purchased, and he controlled the profits. David, Rhonda and Phillip participated by delivering cocaine to buyers, hiding cocaine in their homes, and accompanying Joe on trips to Miami, Florida to purchase cocaine. One other member of the conspiracy, Tom Cook, apparently lived in south Florida, but appeared at Joe's house in Mobile, Alabama occasionally, and assisted Joe in purchasing and distributing cocaine.

In 1983, Joe moved from Tuscaloosa, Alabama to Mobile, Alabama. Both Joe and David purchased houses in Mobile with large amounts of cash, and had title to the houses put in the name of Joe's son, defendant Mark Pritchett. Joe, David and Mark also became involved in several legitimate businesses in Mobile. Joe lent $100,000 in cash to Stan Johnson, the owner of Beltline Auto Brokers, a used-car lot. When Stan became unable to repay the $100,000 loan, Joe agreed to cancel the debt by accepting two parcels of land from Stan, and by taking over another of Stan's businesses, an Ugly Duckling car rental franchise. Mark participated in the purchase of the Ugly Duckling franchise, and took over its operations. Joe and Mark also went into business with Mike Sheffield, the owner of Mobile Towing, a wrecker service. Before he took over the Ugly Duckling franchise, Mark worked as a dispatcher for Mobile Towing and then as a wrecker driver. David and Phillip also worked for Mobile Towing in various capacities.

Between 1983 and 1987, Joe invested hundreds of thousands of dollars, all in cash, in trucks, cars and motorcycles. Title to these vehicles were put in the name of Beltline Auto Brokers, Mobile Towing or Co-Op Leasing, a corporation set up by Joe and Mark to lease equipment to Mobile Towing. During this time, Joe did not file personal income tax returns. Basing its calculations on his expenditures, the

---

[*] Honorable Alvin B. Rubin, Senior U.S. Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

government determined that between 1983 and 1986 Joe accrued personal income tax liability of over $160,000. During those same years, no corporate tax returns for the businesses were filed, but the government offered no proof as to any corporate income taxes owed by the businesses.[1]

The government brought a superseding indictment against the five appellants and Tom Cook[2] in July, 1988. Count One charges Joe, David, Rhonda and Phillip with conspiracy to distribute more than five kilograms of cocaine. Counts Two and Three charge Joe and David with substantive counts of possession with intent to distribute cocaine. Count Four charges Joe, David and Mark with conspiracy to evade the payment of federal income taxes. Counts Five and Six charge Joe and David with fraudulently concealing two cash transactions involving more than $10,000 in violation of 18 U.S.C. § 1001. Count Seven charges Joe with conducting a criminal enterprise involved in trafficking cocaine. Counts Eight and Nine are criminal forfeiture counts against Joe's and David's respective proceeds from drug trafficking.

David and Mark were initially tried in September, 1988. After the trial began Mark's attorney became ill, and the court granted his motion for severance. The jury reached a verdict on only one count of the superseding indictment as to David,

finding him guilty on Count Four (conspiracy to evade taxes). In November, 1988 defendants David, Rhonda, Phillip and Mark were tried together. David was not re-tried on Count Four, but was retried on the other counts of the indictment in which he is named. The jury found David guilty on Counts One, Two, Three, Five and Six, and found for the government on the forfeiture count against David. The jury also found Rhonda and Phillip guilty on Count One (conspiracy to distribute cocaine) and Mark guilty on Count Four (conspiracy to evade taxes).

Joe was a fugitive until November 3, 1988, and eventually pleaded guilty to Counts Four (conspiracy to evade taxes) and Seven (conducting a criminal enterprise involved in trafficking cocaine). Joe was sentenced to five years imprisonment on Count Four, to be followed by four years of supervised release, and restitution of $229,-467. He was sentenced to 25 years imprisonment on Count Seven, to run consecutively to the sentence imposed on Count Four.

## DISCUSSION

### A. Conspiracy to Evade Income Taxes

 Defendants David Pritchett[3] and Mark Pritchett[4] argue that the evidence

---

1. The government contended at oral argument that the corporations were shams, and that any tax liability on their income accrued directly to Joe.

2. Tom Cook was not tried with the five appellants and is not a party to this appeal.

3. David also argues that the district court erred in admitting testimony and surveillance video-tapes involving police investigations of a drug dealer in Memphis in 1980 and of Joe in Tuscaloosa in 1982–83. The testimony and videotapes showed David with Joe at the known drug dealer's house in Memphis and that David frequently visited Joe at his house in Tuscaloosa. David argues that this is evidence of other acts, not related to his actions in Mobile that led to the current indictment. However, the indictment charges David with being involved with Joe and the others in a conspiracy to distribute cocaine between sometime in 1980 and the summer of 1987. Thus, this evidence is direct evidence of the crime charged, and the district court did not abuse its discretion in admitting it.

4. Mark raises two additional issues on appeal. First, he argues that the district court displayed bias against his attorney such that the jury was prejudiced against him. The record indicates that the court warned all attorneys at the beginning of the trial not to make jury arguments during their questioning of witnesses by repeating the witness's answers or by saying things like "Okay," "All right," or "I see" after the witness answered a question. Mark's attorney, as well as one or two others, violated this rule occasionally throughout the trial, and the court consistently reminded them to refrain from such argument. Our review of the record indicates that the judge's reprimands of Mark's attorney for violating this rule were largely given out of the presence of the jury, or couched as gentle reminders. The transcript of one particular bench conference quoted at length in Mark's brief indicates that it was his attorney who became agitated by the court's consistent enforcement of this rule, while the trial judge maintained his composure. We find no grounds for error in the court's treatment of Mark's attorney.

was insufficient to convict them of joining in a conspiracy to evade income taxes owed by Joe Pritchett. In reviewing the sufficiency of the evidence, "[w]e must view the evidence in the light most favorable to the government, accepting all reasonable inferences which support the verdict, and affirm the conviction if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt." *United States v. Meester,* 762 F.2d 867, 881 (11th Cir.) (citations omitted), *cert. denied sub nom. Sawyer v. United States,* 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985). Viewed in this manner, the evidence presented in the first trial against David on the tax count showed that David knew that Joe was earning income from selling cocaine, and that he knew that Joe contributed money toward the purchase of David and Rhonda's house, and various cars, trucks and motorcycles. David was also aware that the title to the house was put in Mark Pritchett's name, and that title to the vehicles was put in the names of the businesses. The evidence also showed that David did not file personal income tax returns for 1983 through 1986 until sometime in 1987.

The evidence presented against Mark showed that he was aware that both Joe's and David's houses were titled in his name. Furthermore, he opened at least two safety deposit boxes in his name for Joe, and delivered and retrieved packages from those boxes for Joe. The evidence did not indicate what was in the packages, nor that Mark was aware of their contents. Mark was also aware that Joe paid cash for many of the vehicles and equipment used by Mobile Towing and other businesses run by Mark, Mike Sheffield and David, and that title to the vehicles was always put in the name of the businesses rather than in Joe's name.

Thus, the evidence shows that David and Mark were aware that Joe purchased many large items with cash, and that he put title to these items either in the names of his children or in the names of the businesses.

David's intimate involvement in the drug distribution operation run by Joe supports the conclusion that David was aware that the cash Joe was using to make these purchases was earned through contemporaneous drug sales. This evidence would allow a reasonable jury to conclude that David knew that Joe was hiding the source of his income, and that David knowingly participated in those efforts. The government did not charge Mark with involvement in the drug conspiracy, and the evidence did not show that Mark was aware that his father was earning large amounts of money from drug sales. Therefore, with respect to Mark, a reasonable jury could conclude that, although he was not aware of the source of the money Joe used, he was aware that Joe was hiding his ownership interests in many large items, and that he assisted Joe in those efforts.

 None of this evidence, however, is sufficient to support a conviction against David or Mark for knowingly conspiring to evade income taxes owed by Joe. To support a conviction for conspiracy, the government must prove that the defendant knew of the conspiracy and with this knowledge voluntarily joined the conspiracy. Although the government need not prove the defendant knew all the details or phases of the conspiracy, it must show at a minimum that the defendant knew the essential nature of the conspiracy. *United States v. Meester,* 762 F.2d at 881. Thus, in the present case, the government must prove that David and Mark knew that by conducting his financial affairs in cash and by hiding his ownership interests in the assets he purchased (including the safe deposit boxes opened by Mark), Joe intended to avoid paying income taxes. *See United States v. Hernandez,* 896 F.2d 513 (11th Cir.1990) (To prove conspiratorial intent, evidence of defendant's knowledge of the conspiracy and its purpose must be clear and unequivocal.); *United States v. Krasovich,* 819 F.2d 253 (9th Cir.1987) (To support conviction for conspiracy to evade tax-

Mark also argues that the district court erred in denying his motion for severance. In light of our determination that the evidence was insuffi-

cient to convict Mark, we need not reach the severance issue.

es, government must prove that defendant who allowed taxpayer to buy assets in defendant's name knew that taxpayer did so with intent to avoid taxes.) When efforts at concealment are reasonably explainable in terms other than a motivation to evade taxes, the government must offer independent proof that those who participated in the concealment intended to assist the taxpayer in evading taxes. *Ingram v. United States*, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959).

In *Ingram*, the Supreme Court reversed the conviction of two participants in an illegal gambling business for conspiracy to evade taxes owed by the principals as a result of the large profits their business earned. The Court held that the fact that the two men participated in concealing the gambling profits was not enough to prove that they intended to evade income taxes. The Court reasoned that the illegality of the business alone provided sufficient reason for concealing the income, and thus it was "not a case where efforts at concealment would be reasonably explainable only in terms of motivation to evade taxation." 360 U.S. at 679, 79 S.Ct. at 1320, 3 L.Ed.2d at 1503. The Court found that a valid conviction of the two men for conspiracy to evade taxes owed by the principals would require independent proof that they knew such taxes were owed. *Id.*

■ As explained above, the government presented sufficient evidence to prove that David and Mark participated in concealing Joe's ownership of various assets, including his interest in the unknown contents of the safe deposit boxes opened by Mark, and to prove that David knew that Joe's money was earned contemporaneously through drug sales, rather than coming from a "cash hoard" from previous years' income. However, the government presented no independent evidence of David's and Mark's knowledge of Joe's tax liability and that Joe's motivation for hiding his income and ownership interests was to evade income taxes. As in *Ingram*, these two men's

efforts at concealing Joe's source of income and ownership interests are "not reasonably explainable only in terms of motivation to evade taxes." *Id.* Because David knew about and participated in the drug sales, his efforts at hiding the income are explained in terms of an effort to prevent detection of the drug business. The evidence does not show that Mark knew Joe's cash represented current income, and therefore only shows that Mark knew that Joe was hiding his ownership interests in various assets. Several witnesses testified that Joe explained the hiding of his ownership interests as an effort to keep his wife from claiming an interest in those assets in the event of a divorce. Other than offering evidence that Joe did not file tax returns in the years that he was earning money from the drug sales, the government offered no independent proof that Joe was motivated by a desire to evade income taxes. Therefore, we find the evidence presented at their trials was insufficient to convict either David or Mark of conspiracy to evade income taxes because nothing in the evidence indicates that either man knew that Joe was not filing tax returns and did not intend to pay his federal income taxes.

The government argues that under precedent established in this circuit in *United States v. Enstam*, 622 F.2d 857 (5th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981)[5] and *United States v. Browning*, 723 F.2d 1544 (11th Cir.1984), the evidence was sufficient to convict both men of conspiring with Joe to evade Joe's income taxes. In both these cases, the court upheld the defendants' convictions despite the fact that no direct evidence of their intent to avoid income taxes was presented. Nevertheless, both *Enstam* and *Browning* are consistent with *Ingram*, in that the government offered independent evidence of an intent to avoid income taxes. In both cases, the court found that the defendants were participants in a money-laundering scheme that was designed to hide the illegal source of the defendants' income and to avoid paying

---

5. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit made prior to the close of business on September 30, 1981.

federal income tax. *Browning*, 723 F.2d at 1547; *Enstam*, 622 F.2d at 862–63. The money earned from illegal drug transactions was first laundered through an offshore bank. The money was then returned to a "dummy" United States corporation in the form of fictitious loans, thus disguising the taxable nature of the income. No direct evidence of an intent on the part of some of the defendants to avoid income taxes was presented, but statements by co-conspirators evidencing an intent to avoid taxes were presented. *Browning*, 723 F.2d at 1547–48; *Enstam*, 622 F.2d at 863–64. In both cases, the court found that the combination of the structuring of the laundering scheme in such a way that the income was disguised as non-taxable loan proceeds and statements made by co-conspirators clearly manifesting an intent to avoid taxes was sufficient to convict all the defendants of conspiracy to evade income taxes. *Browning*, 723 F.2d at 1549; *Enstam*, 622 F.2d at 864.

The government's case against David and Mark contained no similar independent evidence of an intent to evade income taxes. No statements of co-conspirators manifesting a desire to avoid taxes were presented. Furthermore, Joe's habit of putting assets he purchased in someone else's name and his almost exclusive use of cash do not by themselves serve to disguise the money as non-taxable income. Thus, the present case contains no independent evidence of a shared intent to avoid Joe's income taxes like that presented in *Enstam* and *Browning*.

### B. Defendant Rhonda Pritchett

 David Pritchett's wife Rhonda argues that she suffered substantial prejudice by being tried with the others because the majority of witnesses did not testify about her, and instead testified about the numerous drug deals and efforts to hide Joe's income made by Joe, David, Mark and Phillip. Only three witnesses offered testimony relevant to Rhonda's involvement in the drug conspiracy. Therefore, she argues, she was clearly prejudiced by the mountain of evidence presented against the others, and the jury was unable to separate the crimes and the defendants. She argues that the trial court's repeated reminders to the jury to consider certain evidence only against certain defendants indicates the court's recognition that the situation was highly prejudicial to her. Rhonda also complains that she was prejudiced by the introduction of evidence against Joe and David pertaining to police investigations of them in Memphis and Tuscaloosa. This evidence, showing that Joe has long been suspected of drug trafficking, prejudiced Rhonda by telling the jury that she associates with long-time criminals.

Our review of the record indicates that the trial court did not err in refusing to sever Rhonda's trial from that of the others. In *United States v. Walker*, 720 F.2d 1527 (11th Cir.1983), *cert. denied sub nom. Gustin v. United States*, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984), this court held that a defendant does not suffer compelling prejudice simply because much of the evidence presented at trial is applicable only to her co-defendants. Nor does a defendant suffer compelling prejudice because the prosecution introduces damaging evidence relevant to a co-defendant's reputation or criminal record. *Id.* The court reasoned that the possibility of confusion inherent in multi-count and multi-defendant prosecutions can be significantly alleviated if the trial judge is careful to instruct the jury that it must consider the evidence against each defendant on a separate and independent basis. The record shows that the court made a conscientious effort to have the government explain before each witness's testimony which of the defendants the evidence was offered against, and that in its jury instructions the court again carefully instructed the jury to consider the evidence against each defendant separately.

 Rhonda also argues that the evidence was insufficient to show that she joined in the conspiracy to distribute cocaine charged in Count One of the indictment. The three witnesses that testified to Rhonda's involvement testified as follows: Steve Rice testified that Rhonda delivered cocaine to him by herself on at least one occasion and that he thought she might have accompanied David on deliveries made

to him on several other occasions. R13–620–621. Myra Boothe (Phillip's ex-wife) testified that Rhonda told her she had gone with Joe and David on a trip to Florida to buy cocaine, R14–811, and that Myra had seen Rhonda take money from Joe's house, R14–820. Cindy Boothe (also Phillip's ex-wife) testified that Rhonda was not present during a conversation between David and Phillip about leaving town if "things got bad." Rhonda argues that Steve Rice's admission that during his involvement with selling cocaine he was seriously addicted to cocaine and quaaludes makes his testimony inherently incredible, and that the remaining evidence only shows that she knew about the conspiracy, not that she participated in it. Nevertheless, determinations of a witness's credibility are properly left to the jury, and viewed in the light most favorable to the government, this testimony is sufficient to prove that Rhonda knowingly involved herself in the conspiracy, although she may have played only a very minor role. *United States v. Mosquera,* 779 F.2d 628 (11th Cir.1986) (Defendant may be convicted of conspiracy even if she joined conspiracy after its inception and played only a minor role in the operation.)

### C. Defendant Phillip Boothe

 Defendant Phillip Boothe argues that the evidence presented at trial was insufficient to convict him of the conspiracy to distribute cocaine charged in Count One of the indictment. Specifically, he argues that while the evidence was sufficient to establish that such a conspiracy existed, it was insufficient to establish that he joined that conspiracy. Phillip contends that at most the evidence shows that he used cocaine, that he worked for his uncles as a wrecker driver and truck driver, and that his uncles appeared to have a great deal of influence over him.

We find, however, that viewed in the light most favorable to the government, the evidence supports Phillip's conviction. Several witnesses testified to facts that indicate that Phillip contributed his efforts to further the conspiracy, with full knowledge of the conspiracy's purpose. Myra Boothe, Phillip's ex-wife, testified that Rhonda Pritchett told her one day that Phillip was taking cocaine from Rhonda and David's house over to Joe's house. R14–815. Myra also testified that on one occasion Joe called Phillip and asked him to go to Food World and pick up Tom Cook's car and bring it to Joe's house. Phillip took Myra with him to get the car, and after they delivered it to Joe's, Phillip told Myra that the reason they had to get the car for Tom was that there was cocaine in it and Tom was afraid to get it himself. R14–816–817. Cindy Boothe, also Phillip's ex-wife, testified that one morning Joe, David and Ken, Phillip's older brother, came by their house trailer and dragged Phillip out of bed and into the yard. She could hear the men arguing, and after they left, Phillip explained that Joe, David and Ken were angry because he had "messed them up" by skimming some off the top of a coke deal. R14–847–849. Another witness, Jacque Sweatt, testified that Phillip told her that he had taken some scales used to weigh cocaine from David's house and thrown them in the creek because he had heard that the IRS was coming to David's house. R14–872. This testimony provides sufficient evidence from which a reasonable jury could conclude that Phillip joined the conspiracy with Joe, David and the others.

### D. Defendant Joseph Pritchett

Defendant Joseph Pritchett pleaded guilty to Count Four (conspiracy to evade taxes) and Count Seven (conducting a criminal enterprise involved in trafficking cocaine) of the indictment. On appeal he argues that the district court erred by 1) imposing an arbitrary sentence under Count Seven, 2) applying the Sentencing Guidelines that became effective November 1, 1987 to Count Four, and 3) incorrectly applying the Sentencing Guidelines as to Count Four.

 Count Seven of the indictment charges Joe with engaging in a criminal enterprise between 1980 and the summer of 1987. The district court ruled that the new Sentencing Guidelines that became effective November 1, 1987 did not apply, and sentenced Joe to 25 years incarceration on Count Seven. Joe now argues that this sentence is arbitrary, because it is based in

part on information in the presentence report that he contends is false. Specifically, he argues that the presentence report falsely accuses him of attempting to have a witness killed and of being a leader of the criminal enterprise. The district court heard testimony regarding the attempt to kill a witness, and ruled that the presentence report should be changed to reflect that he did create a plan to harm a witness, but eventually called off the plan. No objection regarding his leadership role in the enterprise was presented to the district court. A sentence imposed under pre-guidelines law within the statutory limits is reversible only if the district court acted arbitrarily and capriciously, resulting in a gross abuse of discretion. *United States v. Ard*, 731 F.2d 718, 727 (11th Cir.1984). The record reflects no such capricious action by the district court, and in fact reflects that the court gave careful and deliberate consideration to all evidence presented by Joe in opposition to the pre-sentencing report.

■ Count Four of the indictment alleges that the conspiracy to evade taxes began in 1983 and continued up through the time of the superseding indictment, which was dated July, 1988. Although Joe argued that his criminal conduct with respect to this count had ended in 1984, the district court ruled that there was sufficient evidence to support the government's contention that the conspiracy continued past November 1, 1987. This factual determination is subject to review under the clearly erroneous standard, and our review of the record reveals no grounds for reversal of this determination. The district court therefore correctly concluded that the new Sentencing Guidelines applied to Count Four. *United States v. Terzado–Madruga*, 897 F.2d 1099, 1123 (11th Cir.1990) (When conspiracy began before, but continues past, Nov. 1, 1987, new Sentencing Guidelines apply.)

■ Joe also raises numerous challenges to the district court's application of the guidelines, only three of which were presented to the district court. He argues that the pre-sentencing report falsely accuses him of threatening a man with a gun in furtherance of the conspiracy, and of planning to have a witness killed. The district court determined that there was sufficient evidence to support the government's contention that Joe and his brother David threatened Steve Rice with a gun, and that Joe had planned to have a witness killed, but eventually called off the plan. These findings are subject to the clearly erroneous standard of review, *United States v. Carrillo*, 888 F.2d 117, 118 (11th Cir.1989), and we find no grounds for reversal of these findings by the district court.

■ The evidence that Joe and his brother threatened Steve Rice with a gun is sufficient to support the four level upward adjustment for threatened use of violence in furtherance of the conspiracy under section 2T1.9(b). Additionally, assuming that the fact that Joe called off the plan to have a witness killed makes his plan fall short of an attempt to obstruct justice as it is defined under section 3C1.1 of the Guidelines, other evidence in the pre-sentencing report supports the two level upward adjustment made by the district court under section 3C1.1. The report states that Joe was a fugitive from justice during the prosecution of the co-defendants, and that he continued to hide his assets and the proceeds from the sale of those assets after his indictment and after his arrest. These facts alone support the district court's two level adjustment under section 3C1.1.

■ Joe also argued to the district court that his plea of guilty, his admission that he had distributed cocaine between 1980 and 1984, and his consent to the forfeiture of various assets entitled him to a two level reduction for acceptance of responsibility under section 3E1.1. The district court is in a unique position to evaluate whether a defendant has accepted responsibility for his acts, and this determination is entitled to great deference on review. Unless the court's determination is without foundation, it should not be overturned on appeal. *United States v. Campbell*, 888 F.2d 76, 78 (11th Cir.1989), *cert. denied sub nom. Blige v. United States*, — U.S. ——, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990). Evidence of Joe's continued hiding of assets and of his limited admission of involvement in a drug distribution

and tax evasion conspiracy that continued past 1984 provide a sufficient foundation for the district court's determination that Joe is not entitled to a two level reduction under section 3E1.1. The remaining objections to the district court's application of the guidelines were not presented to the district court, and present no grounds for a finding of plain error.

## CONCLUSION

Because the evidence was insufficient to convict them of conspiring to evade income taxes owed by Joe Pritchett, David Pritchett's and Mark Pritchett's convictions on Count Four of the superseding indictment are VACATED. The remaining convictions against David Pritchett, Rhonda Pritchett, and Phillip Boothe are AFFIRMED. The sentences imposed against Joe Pritchett are also AFFIRMED.