[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12824

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSHUA ROBERTS,
a.k.a. Onyx,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cr-00114-WMR-CCB-10

_____

Before GRANT, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Joshua Roberts appeals his sentence of 97-months' imprisonment with 3 years of supervised release and an order of restitution for conspiracy to commit money laundering.  Roberts argues the district court clearly erred in finding he did not accept responsibility for his offense and denying him a sentencing guidelines reduction pursuant to U.S.S.G. § 3E1.1(a).  For the following reasons, we affirm.

## I.

In 2020, Roberts and twenty-two codefendants, including Dominique Golden, were indicted for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  This was a part of a larger, six-count indictment stemming from the conspiracy.  Two years later, Roberts pled guilty to the single count without a negotiated plea agreement.

Before sentencing, a probation officer prepared a presentence investigation report ("PSI"), which reported the following.  Roberts and his co-conspirators acquired funds through business email compromise ("BEC") scams, romance scams, and retirement account scams that were then deposited into personal and business bank accounts.  Personal bank accounts were often opened using either false identities or the victims' identities, and business bank accounts were opened for "sham" companies that were registered with state secretaries of state but did not have physical business

addresses, earn legitimate income, or pay wages to employees. Once the funds were deposited in fraudulent bank accounts, the co-conspirators would make interstate and wire transfers to other accounts or cash withdrawals to make the funds hard to trace.

The entire conspiracy lasted approximately from October 2012 to February 2020, and Roberts became involved in 2018 through his now-wife, Dominique Golden. The BEC schemes involved tricking a company's employee into clicking on an attachment or a link in an email that appeared to be legitimate, which then released malware that provided access to the employee's email correspondence. The intruder would monitor the correspondence to determine when a large financial transaction was scheduled to take place. The intruder would then send an email posing as a party to the transaction, instructing the money to be wired to a different account, i.e., one controlled by the intruder or a conspirator.

Federal agents linked Roberts to over two dozen different fraudulent transactions from 2018 to 2020. Roberts's role was to open bank accounts that would receive the fraudulent funds obtained from BEC scams and then to withdraw the money from those accounts, sometimes transferring them to other fraudulent accounts. Roberts was associated with ten separate bank accounts at seven different financial institutions, eleven different aliases, and eight "sham" companies. The PSI calculated $10,147,697.40 as the intended loss attributable to Roberts and $9,675,739.73 as the actual loss payable in restitution.

When asked to describe his conduct by the probation officer, Roberts said the following:

> I met Dominique Golden in April 2018, while I was living in Atlanta, Georgia. Golden got me involved in this case through her circle of friends which included her ex-boyfriend. I committed the offense because I had a lot going on in my life at the time and my motivation for committing the fraud was for financial gain. I received funds into my account from two separate wire transfers and then had cashier's checks issued in names provided to me by Golden. These names were aliases used by Golden. I am remorseful for my conduct.

The PSI calculated a base offense level of 28 pursuant to U.S.S.G. § 2S1.1(a)(1). The PSI then assessed a two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B) because Roberts was convicted of an offense under 18 U.S.C. § 1956. The PSI did not recommend an acceptance-of-responsibility adjustment under U.S.S.G. § 3E1.1 because, although Roberts pled guilty and expressed remorse, he still falsely contended that he received only two wire transfers into accounts he controlled and minimized his involvement and role by trying to shift the blame to Golden.

Based on an offense level of 30 and a criminal history category of I, the calculated guideline range was 97 to 121 months' imprisonment. The PSI further recommended that Roberts be jointly and severally liable for payment of restitution in the amount of $9,675,739.73. The statutory maximum term of imprisonment was 20 years.

Roberts made numerous factual objections to the conduct reported in the PSI, including denying that he was affiliated with certain bank accounts and sham companies and denying that he used certain aliases. He also objected to the PSI's failure to recommend an acceptance-of-responsibility reduction, arguing that his offense level should be reduced by two to 28. With Roberts's criminal history category of I, this offense level would provide for a guideline range of 78 to 97 months. *See* U.S.S.G. ch. 5, pt. A. Roberts argued that he was explaining his role in the fraud by acknowledging his wife as the instigator for his involvement and was not attempting to shift blame away from himself. He also argued that he accepted responsibility for his actions. Roberts repeated these arguments in his sentencing memorandum, in which he requested a sentence of 70 months' imprisonment. He stated that, by addressing his wife's role, who was the "driving force behind his participation in the criminal enterprise," he "was attempting to adequately explain his motivations and deviations from his normal behavior to course of conduct for which he felt ashamed."

At sentencing, the district court recognized that while Roberts had previously objected to "almost everything" regarding his involvement in the case, he had withdrawn all his objections other than the one relating to the acceptance-of-responsibility reduction. Roberts's counsel explained that while Roberts initially found it difficult to "wrap his mind around" the extent of his responsibility for the conspiracy, he withdrew the objections because "he understands that the overarching conduct was extremely hurtful" and "is extremely remorseful." Counsel also told the district court that

Roberts was "swept up into romance" with Golden and described his actions as "willful ignorance" in the beginning. However, counsel stated Roberts now "realizes that the money was fraudulently obtained and that he had a part in that."

Roberts told a similar story during his allocution, describing how he met Golden and how she offered to help him out if he "agreed to cash some checks for her." While Roberts said he "absolutely had no idea of a larger scheme at hand," when he opened his first bank account, he "was ready to do whatever" for Golden. He started to "realize more and more what a dangerous game [they] were both playing" after Golden was arrested five months into their marriage. And then, when Golden was arrested again along with Roberts on this indictment, Roberts said to his "surprise this was far bigger than [he] initially imagined." Although he "had good intentions," his "actions spoke otherwise." Now, he said, he understands his past actions were "totally unacceptable and inappropriate."

Roberts's counsel then argued that even though it had taken Roberts a while to come to terms with his actions, he withdrew his factual objections, was prepared to sign a financial restitution agreement, and was willing to cooperate with any further investigation. Counsel asked the district court to grant Roberts the full three-level acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1.[1]

---

[1] On appeal, Roberts concedes that he is only eligible for a two-level deduction given that an additional, one-level reduction under U.S.S.G. § 3E1.1(b)

As for the 18 U.S.C. § 3353(a) factors, Roberts's counsel argued that Roberts did not "have the greatest familial influences growing up," which made him susceptible to Golden's influence. Moreover, counsel argued that a 70-month sentence was a significant amount of time to spend in prison for someone in their early thirties, said a longer sentence was unnecessary to promote respect for the law, and noted that Roberts hoped to take advantage of many programs while in prison to make a positive impact when he is released. Counsel also predicted that Roberts would not commit any more offenses once released and asked the court to consider Roberts's codefendants' sentences to avoid sentencing disparities, specifically pointing to Golden's 54-month sentence. The district court interjected that Roberts and Golden were situated quite differently in terms of the guideline range even though he was "pointing a finger at her." Counsel concluded by stating that Roberts was "taking full responsibility" but "was not the ringleader in this" and that, thus, a 70-month sentence would be appropriate.

In response to Roberts's request for the acceptance-of-responsibility reduction, the government argued that pleading guilty does not automatically entitle a defendant to an adjustment and that the burden was on Roberts to show he has acted consistent with acceptance of responsibility. The district court asked whether this Court forbade credit when a defendant entered a plea that did not require the government to prove its charges at trial but did not

_____

requires, among other things, a "motion of the government," in support of the reduction.

take full responsibility for his actions. The government responded that it would not be forbidden, but proceeded to point to this Court's precedent in which we held that frivolously withholding or contesting information that is later determined to be true is inconsistent with acceptance of responsibility. *See, e.g.*, *United States v. Moriarty*, 429 F.3d 1012 (11th Cir. 2005). The government contended that Roberts presented a "false narrative" to the probation officer and to the court in his allocution, even though he had withdrawn his factual objections to the PSI, and thus his case was like those where a reduction was denied. The government also refused to recommend the one-level adjustment under § 3E1.1(b), for a defendant is only eligible for it when he first receives a two-level deduction under § 3E1.1(a).

The government advocated for a sentence of 105 months' imprisonment, followed by three years of supervised release. The government argued that although Roberts was charged with only one count, his involvement was essential to the success of the conspiracy, and he laundered over ten million dollars. The government also pointed out that Roberts and Golden had supported their lavish lifestyle with fraudulent money and emphasized Roberts continued to do so even after Golden was arrested. Further, the government argued Roberts was not similarly situated to any of his codefendants because his loss amount was significantly greater, he did not have similar mitigating circumstances, and he continued to shift blame instead of taking accountability for his own actions, even though his involvement was on balance with Golden's.

Roberts's counsel responded that it was not Roberts's intention "to pass off responsibility onto Ms. Golden" but only "to explain how he got involved with the conduct to begin with." As for the loss amount, counsel explained to the court that Roberts had rejected a plea offer when the calculated loss was lower, so the only reason he had a greater attributed loss than his codefendants was because the government had more time to investigate him.

The district court adopted the PSI's factual findings and stated that they reflected Roberts's involvement from the "outset" was that of more than just a "bit player influenced by others." Given Roberts's attempt to "minimize his involvement," to "accept some responsibility but only a piece," and "then to explain it in a way that blames others despite that that's not what the facts in the PS[I] establish," the district court found it difficult to find any reason to give Roberts credit for his guilty plea based on the § 3553(a) factors and § 3E1.1. The district court also said it was "not sure that the defendant necessarily appreciates" all "the harm that has occurred by all of these victims and all of this money." The district court found it unpersuasive that Roberts agreed to forfeiture and restitution because recovery of the money owed was unlikely in cases of this magnitude.

Ultimately, the district court concluded that it would not deviate from the guidelines calculation, overruled Roberts's objection to the denial of the acceptance-of-responsibility adjustment and imposed a sentence of 97 months. In explaining its low-end sentence, the court stated that it considered the fact that Roberts's

guilty plea saved the government from having to go to trial. The district court further ordered restitution in the amount of $9,675,739.73 and a 3-year term of supervised release.

The district court found none of the § 3553(a) factors weighed in Roberts's favor. The district court concluded Roberts's personal history and characteristics did not outweigh his offense conduct. The district court stated that it wanted the sentence imposed to reflect the seriousness of the offense and provide adequate deterrence, especially since Roberts minimized his role in the conspiracy. In discussing the need to avoid sentencing disparities between codefendants, the court noted Roberts might have been able to receive credit for acceptance of responsibility if he had accepted a plea agreement; however, it was skeptical he would have been awarded the adjustment "based upon his refusal to fully embrace his own conduct" at the hearing. Further, the court stated it would not be fair to other defendants who do take responsibility after agreeing to a plea to have Roberts turn down a plea agreement and then receive the benefits of one. The district court found no grounds for granting a variance.

When prompted by the court, the government asked the district court to clarify statements it made regarding its understanding of its authority to deviate from the guideline range. The district court responded that it "obviously" had the ability to depart from the guidelines; it just found no "justification in the facts of this case to depart." The district court also said that the resulting sentence would have been the same "even if the guidelines specifically had

a provision that would allow [it] to have a lower guideline range than what actually [it] ha[d] determined applie[d] in this case . . . in light of the unwillingness of the defendant to fully embrace his own activity." Roberts raised no objections.

This appeal ensued.

## II.

We review a district court's findings regarding an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1 for clear error. *United States v. Tejas*, 868 F.3d 1242, 1247 (11th Cir. 2017). We will not disturb a district court's findings under clear error review "unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (quoting *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010)). A district court's "choice between two permissible views of the evidence: will rarely constitute clear error. *Id.* (quoting *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc)). Because the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," the "determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n.5. Thus, we will not set aside its determination that a defendant is not entitled to a reduction "unless the facts in the record clearly establish that the defendant has accepted responsibility." *Moriarty*, 429 F.3d at 1023.

A district court's decision as to the applicability of a guidelines adjustment is also subject to harmless error review. *See United*

*States v. Focia*, 869 F.3d 1269, 1287 (11th Cir. 2017). An error is harmless in this context when it "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992). To know that an error in this context "was truly harmless," we first need "knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way." *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). We then must determine whether the resulting sentence would be reasonable "even if the guidelines issue had been decided in the defendant's favor." *Id.* In reviewing the reasonableness of a sentencing decision, the abuse of discretion standard applies. *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). And the burden is on the defendant to demonstrate that his sentence is unreasonable. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

## III.

A defendant may receive a two-level reduction in his base offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). This provision "is intended to reward those defendants who affirmatively acknowledge their crimes and express genuine remorse for the harm caused by their actions." *United States v. Carroll*, 6 F.3d 735, 740 (11th Cir. 1993).

In deciding whether § 3E1.1(a) applies, district courts "can consider a wide range of evidence." *United States v. Scroggins*, 880 F.2d 1204, 1215 (11th Cir. 1989). The commentary to § 3E1.1 provides that the "[e]ntry of a plea of guilty prior to the

commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under [U.S.S.G] § 1B1.3" constitutes "significant evidence of acceptance of responsibility" for purposes of § 3E1.1(a).  U.S.S.G. § 3E1.1 cmt. n.3.  However, this evidence "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.*  And a defendant acts in a manner "inconsistent with acceptance of responsibility" when he "falsely denies, or frivolously contests, relevant conduct that the court determines to be true." *Id.* cmt. n.1(A).  Therefore, a guilty plea alone does not entitle a defendant to an adjustment "as a matter of right." *Id.* cmt. n.3.  Other considerations include "voluntary termination or withdrawal from criminal conduct or associations" and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *Id.* cmt. n.1(B), (H).  On the other hand, we have said that district courts cannot consider a defendant's "pre-federal charge conduct" in deciding as to an acceptance-of-responsibility reduction. *United States v. Wade*, 458 F.3d 1273, 1281 (11th Cir. 2006).  "The defendant bears the burden of clearly demonstrating acceptance of responsibility." *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999).

Roberts has failed to show that the record contains "facts sufficient to clearly establish that [he] accepted responsibility for his actions." *Id.*  Therefore, the district court's determination is not "without foundation," *United States v. Castillo-Valencia*, 917 F.2d 494, 500 (11th Cir. 1990), and the district court has not clearly erred.

Before overruling Roberts's objection, the district court explained that "[n]o matter how strong the facts are," Roberts "nonetheless [took] the position that he was but really a bit player influenced by others." And, the court explained, Roberts continued to "minimize his involvement," "accept some responsibility but only a piece," in the face of facts that prove otherwise, and explain his involvement "in a way that blames others." The district court pointed to the fact that Roberts withdrew his factual objections to the PSI only a short time before the sentencing hearing. And the district court was also unsure as to whether Roberts "necessarily appreciate[d]" the harm the conspiracy caused.

The record supports the district court's conclusion. Despite withdrawing his factual objections, Roberts maintained at the sentencing hearing that Golden was the reason he got involved, that he "absolutely had no idea of a larger scheme at hand" when he first became involved, and that, "to [his] surprise," the scheme "was far bigger than [he] initially imagined" when he was arrested. Further, Roberts stated that he "had good intentions" when he was involved in the conspiracy, even though his "actions spoke otherwise." Roberts's counsel also told the court that Roberts "got swept up into romance" when he first became involved in the conspiracy and that it was "more of a willful ignorance situation in the beginning."

To be fair, Roberts did say that he now understands his past behavior was "totally unacceptable and inappropriate" and now recognizes that he "hurt a lot of people in [his] bad decision

making." Further, his counsel later explained that Roberts's intention was "not to pass off responsibility onto Ms. Golden but to explain how he got involved with the conduct to begin with." But the district court, not this Court, "is in a unique position to evaluate whether a defendant has accepted responsibility for his acts." *United States v. Pritchett*, 908 F.2d 816, 824 (11th Cir. 1990). Accordingly, it is the district court's job, not ours, to decide between two permissible views of the evidence. *See Cruickshank*, 837 F.3d at 1192. The district court was within its discretion to interpret the evidence as Roberts continuing "to blame his involvement on others," *United States v. Shores*, 966 F.2d 1383, 1388 (11th Cir. 1992), and to conclude on that basis to overrule Robert's objection. Therefore, the district court did not clearly err in denying the acceptance-of-responsibility reduction.

Roberts resists this conclusion by first arguing that the district court erred by relying on his pre-indictment conduct in denying the reduction. But the district court did not cite Roberts's pre-indictment conduct in explaining its decision, and the government's mentioning of Roberts's pre-indictment conduct in arguing against the reduction does not mean that the district court based its decision on that conduct.

Roberts next argues that the district court gave undue weight to his factual objections and short shrift to his subsequent withdrawal of them and his admissions. But in denying Roberts an acceptance-of-responsibility reduction, the district court focused on Roberts's attempts to "minimize his involvement" and to blame

others despite the undisputed facts of the case being otherwise. True, the district court also mentioned Roberts's factual objections, but we do not think that the district court gave them undue weight when compared to its consideration of Roberts's statements at sentencing, nor fault the district court for considering the belated nature of Roberts's apology for the full scope of his actions. *See United States v. Sammour*, 816 F.3d 1328, 1341 (11th Cir. 2016).

Finally, Roberts argues that the district court was wrong in concluding that the part of his allocution about his wife was an attempt to cast blame instead of an explanation of his involvement. Entertaining this argument, however, would have us second guess the district court's determination on the matter, taking us far afield of our role in conducting clear error review, where we provide "great deference" to the district court's decision. *Pritchett*, 908 F.2d at 824. Deciding between two permissible views of the evidence is the district court's prerogative, and such a decision is not a basis for reversal here. *See Cruickshank*, 837 F.3d at 1192.[2] Roberts has therefore not convinced us that the district court clearly erred below.

Further, even if Roberts was correct that the district court clearly erred, the district court's error would be harmless, as it "did

---

[2] Roberts also argues that the district court based its decision on the incorrect belief that Roberts was involved in the conspiracy since its inception because the district court referenced Roberts's involvement at the "outset." But that does not match up with the district court's adoption of the PSI. The district court looked "to the [PSI] as providing the facts" that it relied on for what happened in the case (**Id.**), and the PSI provided that Roberts first became involved in 2018, years after the conspiracy began.

not affect the district court's selection of the sentence imposed." *Williams*, 503 U.S. at 203. First, the district court stated that even if the guidelines "had a provision that would allow [it] to have a lower guideline range than what actually [it] has determined applies in this case"—presumably, a provision that allows for a reduction because of a guilty plea—"the result would be the same" because of Roberts's unwillingness to embrace his own conduct. And second, Roberts's sentence "would still be reasonable" under the resulting guidelines range. *Keene*, 470 F.3d at 1349. If the district court had granted a two-level reduction, the resulting guidelines range would be 78 to 97 months. *See* U.S.S.G. ch. 5, pt. A. Roberts's sentence, 97 months, comes within this range. Although we do not automatically presume that a sentence is reasonable if it is within the guidelines range, "we ordinarily expect such a sentence to be reasonable. *United States v. Perkins*, 787 F.3d 1329, 1342 (11th Cir. 2015). And Roberts has not carried his burden of showing that his 97-month sentence is substantively unreasonable "in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts," *Rosales-Bruno*, 789 F.3d at 1256, even with an assumed guidelines range of 78 to 97 months.

Here, the district court stated that it "considered all of the" factors found in 18 U.S.C. § 3553(a). The district court considered Roberts's childhood, *see* § 3553(a)(1), but concluded that it did not explain or mitigate "the detailed and long nature and extensive fraud money laundering" in which Roberts engaged. The district court weighed the seriousness of the offense and the need for the sentence to provide adequate deterrence both to the public and to

Roberts, *see* § 3553(a)(2), especially because Roberts's "minimizes his culpability." The district court also made sure to note that it considered "the kinds of sentences available," *see* § 3553(a)(3), and the "need to avoid sentencing disparity," *see* § 3553(a)(6), with the district court saying as to the latter factor that it was hard to compare Roberts's sentence with his co-defendants because he had a higher loss amount and failed to agree to a plea agreement.

The district court also noted the "astounding" amount of money at issue and number of victims of the conspiracy in which Roberts was more than a "bit player." As detailed above, the PSI calculated $10,147,697.40 as the intended loss attributable to Roberts, and over the course of two years, Roberts opened multiple bank accounts for sham companies and used different aliases to launder money. With all of this in mind, Roberts's sentence of 97 months' imprisonment would still be reasonable under the guidelines range that would have resulted if the district court applied the acceptance-of-responsibility reduction. Therefore, even if we assume the district court committed error in failing to apply an acceptance-of-responsibility reduction, it was harmless. *See Keene*, 470 F.3d at 1349–50.

Accordingly, we affirm Roberts's sentence.

**AFFIRMED.**